**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR 03-0974-PHX-DGC |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Neil Rusty Bond, ) | |
| Defendant. ) | |

At the beginning of Defendant's sentencing hearing on January 9, 2006, defense counsel handed the Court and counsel for the Government a motion for reconsideration. The 20-page motion sought reconsideration of the Court's July 14, 2005 order denying Defendant's motion for a new trial. *See* Docs. ##135, 139. The Court denied the motion for reconsideration from the bench, stating that it was untimely. *See* Doc. #158. The Court has since reviewed and considered the motion and in this order will explain why the motion, and a subsequent motion for new trial based on newly discovered evidence, will be denied. This Order will also explain two decisions made at sentencing.

**Background**

Defendant was found guilty by a jury on March 11, 2005. *See* Doc. #114. Defendant was required to file a motion for new trial on grounds other than newly discovered evidence within seven days of the jury's verdict. Fed. R. Crim. P. 33(b)(2). On March 18, 2005, Defendant moved to extend the time for filing a motion for new trial. *See* Doc. #126. Judge Silver granted the motion and gave Defendant until April 1, 2005 to file the motion. *See*

1  Doc. #127. Defendant's motion was docketed on April 4, 2005, presumably because it was
2  filed late in the day on April 1, 2005. *See* Doc. #135. Following briefing and transfer of the
3  case to this Court, the Court denied the motion for new trial on July 14, 2005. *See* Doc.
4  #139.

5  Following denial of Defendant's new trial motion, the process of preparing for
6  sentencing commenced. The sentencing date, originally set for July 16, 2005, was extended
7  to August 17, 2005 at the request of the probation officer preparing the presentence report.
8  *See* Doc. #140. On September 7, 2005, defense counsel filed an *ex parte* motion seeking the
9  appointment of an accountant to assist defense counsel in preparing for sentencing. *See*
10 Doc. #143. The Court granted the motion on September 26, 2005. *See* Doc. #144.

11 A draft of the presentence report was disclosed to defense counsel on
12 October 11, 2005. *See* Doc. #145. Defense counsel requested that the sentencing be
13 continued at least 30 days to permit review of the report and preparation of objections. *Id*.
14 The Court granted the request and continued sentencing until November 28, 2005. *See*
15 Doc. #146.

16 On November 22, 2005, defense counsel filed a second motion to continue sentencing.
17 *See* Doc. #147. Defense counsel sought additional time to consult with the accountant,
18 prepare for sentencing, and draft objections to the presentence report. *Id*. The Government
19 opposed the requested extension, noting that the issues being addressed by defense counsel
20 had been fully litigated at trial. *See* Doc. #148. The Court granted Defendant's request and
21 continued the sentencing to January 9, 2006. The Court's order specifically stated that the
22 Court did not intend to grant additional extensions. *See* Doc. 149.

23 On November 28, 2005, Defendant sought additional funding for the court-appointed
24 accountant. *See* Doc. #152. The Court granted the request two days later. *See* Doc. #153.

25 Despite these repeated extensions and the resources provided by the Court, Defendant
26 did not file objections to the presentence report within the time required by Federal Rule of
27 Criminal Procedure 32(f)(1)), nor did Defendant seek an extension of time to file such
28 objections. Rather, on the Saturday before the Monday sentencing, Defendant filed a 26-

1  page memorandum setting forth numerous objections to the presentence report, accompanied
2  by 48 pages of exhibits. *See* Docs. ##154, 155.  The Court was frustrated that Defendant
3  would file such substantial objections on the weekend before the Monday sentencing,
4  particularly given the timing requirements set forth in the federal rules and the fact that the
5  Court had eight other sentencings on the same Monday.  This frustration was compounded
6  when defense counsel appeared at the sentencing hearing and handed the Court a motion for
7  reconsideration of the Court's new trial order entered six months earlier on July 14, 2005.
8  *See* Doc. #157.

## Discussion

**A.     The Motion is Untimely**.

Unless based on newly discovered evidence, motions for new trial must be filed promptly.  Rule 33(b)(2) requires that such motions "be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period." This time limitation is jurisdictional.  The Court is without power to consider an untimely motion for a new trial.  *See* Wright, King & Klein, Federal Practice and Procedure: Criminal 3d § 558.

The reason for this short time limit is obvious.  A new trial, if granted, should be granted promptly to avoid the loss of evidence, the need to duplicate efforts by counsel and the Court in preparing for trial, and the unnecessary triggering of substantial sentencing procedures.  Although the federal rules do not place a time limit on motions for reconsideration following the denial of a motion for new trial, the same reasoning would suggest that such motions should be filed promptly. (The Court notes that local rules in civil cases require that motions for reconsideration be filed within ten days of the order that is the subject of the motion.  *See* L.R.Civ. 7.2(g).)  Although reasonable minds could debate the amount of time that should be allowed for seeking reconsideration of the denial of a new trial, there is no reasonable argument to justify the filing of such a motion six months after the motion for new trial was denied, four months after the Court appointed an accountant to assist at sentencing, three months after the presentence report was first submitted to defense

counsel, and minutes before the twice-continued sentencing hearing.

Thus, to the extent the motion for reconsideration is based on matters other than newly discovered evidence, the Court concludes that it is untimely. This ruling notwithstanding, the Court has reviewed Defendant's motion for reconsideration so as not to penalize him for his counsel's untimely filing.

**B.     Merits of the Motion for Reconsideration.**

The motion for reconsideration as originally filed included no attachments. The Court noted from its docket that those attachments were filed several days later, on January 13, 2006, and include 35 pages of material. *See* Doc. #159. The Court has reviewed the attachments.

As a general matter, motions for reconsideration are disfavored and are not the place for parties to make new arguments not raised in their original briefs or to ask the Court to simply rethink what it has already thought. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988); *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998). Defendant's motion argues several points previously resolved by the Court. These include Defendant's right to poll the jury, the alleged denial of Defendant's right to counsel, alleged error in the initial instructions to the jury, and the alleged lack of foundation for exhibits 39 and 42. To the extent Defendant's motion restates arguments previously rejected by the Court, they will not be reconsidered. To the extent Defendant makes new arguments in support of these issues, but not based on newly discovered evidence, the Court concludes that they cannot properly be raised in a motion for reconsideration. For example, the motion for reconsideration now asserts that Exhibits 31, 35, 37, 41, and 46 lacked foundation. Because Defendant could have made these arguments in his motion for new trial, but failed to do so, the Court will not consider them now.

**C.     Newly Discovered Evidence.**

At the hearing on January 17, 2006, while making a proffer in support of his motion for reconsideration, defense counsel suggested that he had found newly discovered evidence that would have altered the outcome of the trial. Because motions for new trial based on

1  newly discovered evidence may be filed within three years of trial under Rule 33(b)(1) of the
2  Federal Rules of Criminal Procedure, the Court concluded that Defendant's motion for
3  reconsideration should be treated as a motion for new trial to the extent it is based on newly
4  discovered evidence.  Despite the fact that this issue was raised for the first time orally, at
5  the sentencing hearing, and without prior notice to the Court or counsel for the Government,
6  the Court decided to permit briefing.  The sentencing hearing was adjourned until March 1,
7  2006, and Defendant filed a memorandum with exhibits on January 27, 2006.  *See* Doc.
8  ##166, 167, 168.  The Government filed a response with exhibits (Doc. ##169, 170) and
9  Defendant filed a reply (Doc. ##173, 174, 178).

10  To obtain a new trial on the basis of newly discovered evidence, a defendant must
11  satisfy a five-part test: "'(1) the evidence must be newly discovered; (2) the failure to
12  discover the evidence sooner must not be the result of a lack of diligence on the defendant's
13  part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither
14  cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would
15  probably result in acquittal.'" *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005)
16  (quoting *United States v. Kulczyk,* 931 F.2d 542, 548 (9th Cir. 1991)).  Defendant argues that
17  two categories of newly discovered evidence satisfy this test.

18  **1.   IRP Summary Sheets.**

19  The first category of newly discovered evidence consists of summary sheets of
20  Internal Revenue Service documents known as Information Returns Processing ("IRP").
21  Defendant did not receive the summary sheets from counsel for the Government until after
22  trial, and contends that the summary sheets constitute newly discovered evidence that entitles
23  him to a new trial.

24  In order to address Defendant's argument, the Court must review the circumstances
25  under which the summary sheets were obtained.  On March 8, 2005, the third day of trial, a
26  discussion occurred concerning two letters provided to the Government as defense exhibits
27  on the previous Friday.  The letters purported to be communications Defendant sent to the
28  IRS clarifying mistakes he had made on tax returns.  Upon receiving these proposed exhibits,

1    the Government asked Judge Silver to issue an order to the IRS for records that would
2    confirm whether or not these letters were actually sent by Defendant and whether or not any
3    amended returns were filed.  (TT 3/8/05, at 10-12.)  Judge Silver granted the request and
4    stated that the Government should provide Defendant with copies of what was received.  On
5    March 8 or 9, 2006, counsel for the Government received materials from the IRS that
6    included the IRP summary sheets, but determined that the records were not the impeachment
7    material she had hoped to obtain and were not otherwise relevant.  Through oversight, the
8    sheets were not provided to Defendant as ordered by Judge Silver.

9    Defendant admits in his briefing that he had received IRPs from the IRS before trial.
10   He states, however, that the IRPs he received did not include the summary sheets obtained
11   by the Government during trial.  The Court has reviewed the IRPs, including the summary
12   sheets, and concludes that the documents obtained by Defendant before trial contain all of
13   the information set forth on the summary sheets.  For example, the IRPs obtained by
14   Defendant before trial show that Defendant received three categories of income for tax year
15   2001: "MTG INT PD" totaling $3,381, "NONEMP COM" totaling $22,907, and "GR
16   PEN/IRA" totaling $12,660.  These are precisely the amounts and categories of income
17   reflected on the IRP summary sheet for the same year.  Thus, although Defendant would be
18   required to add the numbers from his 2001 IRP sheets in order to reach the totals reflected
19   in the summary sheet for that year, the summary sheet does not include any information that
20   Defendant had not obtained from the IRS before trial.

21   Defendant asserts that the summary sheets were essential because they showed the
22   sum total of all amounts received by Defendant for tax year 2001, a fact not revealed from
23   the documents he received.  *See* Doc. #169, Ex. B.  The Court notes, however, that the IRPs
24   received by Defendant for the tax year 2001 were numbered, and showed not only the
25   individual page number of a document but also the total number of pages for the tax year in
26   question.  Thus, the first document Defendant received for 2001 is labeled "PAGE 0001 of
27   0010" and the last page is labeled "PAGE 0010 of 0010." *Id.*  The documents in this way
28   indicate that Defendant received all of the pages for the tax year in question, confirming that

1 they include all income reported to the IRS for that year.  Defendant did not need the
2 summary sheet to confirm that he had a complete statement of the year's income.

3 Because the IRPs received by Defendant before trial contain all of the information
4 included in the IRP summary sheets, the Court concludes that the summary sheets are not
5 newly discovered evidence.  They do not disclose any factual information that was not
6 already possessed by Defendant before trial.

7 Even if one could conclude that the summary sheets constitute newly discovered
8 evidence, a new trial is not warranted.  As noted above, the evidence must be such that a new
9 trial would probably result in acquittal.  *Harrington*, 410 F.3d at 601.  Defendant cannot
10 satisfied this test.  Defendant asserts that the summary sheets would have been used at trial
11 to cross-examine the Government's accounting witness and to show that the Government's
12 income numbers for the years in question were substantially overstated.  The Court cannot
13 conclude that such evidence would probably have resulted in acquittal.

14 To prove the amount of Defendant's income during the years in question, the
15 Government turned to several sources.  These included insurance company check receipts
16 found in Defendant's home with a search warrant; insurance company statements of money
17 paid to Defendant, received in response to a government trial subpoena; and copies of
18 Defendant's 1997-1999 income tax returns, located with the search warrant.  Subpoenaed
19 records from the companies, summarized in Trial Exhibit 86, indicated that Defendant
20 received sales commissions ranging between $30,388,71 and $43, 257.71 per year between
21 1998 and 2001.  Defendant's 1997, 1998, and 1999 tax returns showed him reporting
22 substantial work mileage, a letter written by him in 1997 stated that he had thousands of
23 insurance clients, and Defendant reported to the IRS in 2000 that he earned $32,878.
24 Evidence submitted at trial also showed that Defendant engaged in other kinds of work
25 during the relevant time period, including work as a private investigator and as a salesman
26 for a product he developed.

27 This evidence convinced the jury that Defendant's income in the years in question was
28 substantially greater than he disclosed to the Social Security Administration and that

1 Defendant was not entitled to disability benefits. The Court concludes that Defendant's
2 possession of the summary sheets at trial would not have affected the outcome of the trial.
3 Defendant argues that a lower standard should be applied given the fact that the
4 summary sheets were actually in the Government's possession during trial. Relying on a
5 case from the Second Circuit, Defendant argues that he need only show a "significant
6 chance" that the new evidence would have resulted in acquittal. Doc. #167 at 5 (quoting
7 *United States v. Miller*, 411 F.2d 825 (2nd Cir. 1969)). Even if this standard is applied, it has
8 not been satisfied. The Court cannot conclude that the summary sheets would have created
9 a significant chance of acquittal. As noted above, the evidence presented by the Government
10 concerning Defendant's income during the years in question was substantial. The summary
11 sheets, which can be viewed as largely consistent with the Government's evidence, would
12 not have created a significant chance of acquittal. Moreover, as also noted above, Defendant
13 possessed IRP documents before trial that contained all of the information shown on the
14 summary sheets. His possession of those documents did not affect the outcome of the trial.

15 **2. Tax Returns.**

16 Defendant also argues that tax returns he recently filed for the years 2000 and 2001
17 constitute newly discovered evidence. Defendant's memorandum explains that these tax
18 returns were prepared by Gary F. Klein, an enrolled agent authorized to represent people
19 before the IRS. Mr. Klein apparently prepared the returns working in conjunction with the
20 accounting expert the Court appointed to assist Defendant in preparing for sentencing.

21 The Court is not persuaded that the 2000 and 2001 tax returns constitute newly
22 discovered evidence. Defendant has made no showing that he was unable to prepare the tax
23 returns and file them before his trial commenced in March of 2005. Although Defendant has
24 asserted in post-trial briefings that financial information for these years was stolen from his
25 office and was seized by the Government as part of this case, he apparently was able to
26 prepare the tax returns without such information. Defendant makes no showing that he could
27 not have prepared and filed the returns through an exercise of reasonable diligence before
28 trial. Evidence that could have been obtained through due diligence before trial cannot

provide the basis for a new trial based on newly discovered evidence. *See Harrington*, 410 F.3d at 601.

Moreover, Defendant has provided no information from which the Court can conclude that the 2000 and 2001 tax returns prepared recently by his litigation team accurately reflect his actual earnings in those years. Defendant provides no explanation as to what information was used to prepare the returns, where it was obtained, or why it is reliable. Thus, in addition to the fact that the returns are not newly discovered evidence, the Court cannot conclude that their availability in a new trial would probably result in acquittal. *Id*.

Because Defendant has not satisfied the test for a new trial on the basis of newly discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure, his motion for reconsideration, construed as a motion for new trial, will be denied.

**D.   Sentencing Determinations.**

At Defendant's sentencing on March 1, 2006, the Court made two determinations that warrant further explanation. First, the Court determined that the loss amount for sentencing purposes was $88,800.70. Second, the Court concluded that Defendant should not receive a two-level enhancement for obstruction of justice.

**1.   Loss Determination.**

The Presentence Report concluded that the loss attributable to Defendant's conduct was $101,222.70 and therefore increased his offense level by eight levels under Guideline § 2B1.1(b)(1)(E). This loss determination was based on information provided by the case agent.

Defendant objected to the loss calculation. In objections filed on January 7, 2006 (Doc. #154), Defendant argued that the loss amount is based on benefits paid to Defendant and his daughter during a period when Defendant was eligible to receive benefits. Specifically, Defendant argued that the income numbers used during the years in question reflected gross income, not net income, and that a correct calculation of net income would have revealed that Defendant did not receive enough income to disqualify him from receiving Social Security benefits.

1   In response to Defendant's objection, the Court asked counsel for the Government a number of questions at the hearing on January 17, 2006. In the Government's filing of February 9, 2006 (Doc. #169), the Government provided additional information and evidence in support of its loss calculation. Because the loss calculation will result in an eight-level enhancement, counsel for the Government agreed at the sentencing hearing on March 1, 2006 that the loss amount must be established by clear and convincing evidence.

The Government's loss calculation of $101,222.70 is set forth in Trial Exhibit 50. *See* Doc. #156. Exhibit 50 lists the amount of Social Security benefits paid to Defendant for the months of August, 1996 through July, 2002. These benefits, when added to supplemental medical insurance premiums of $3,345.20 paid for the same months, total $67,494.70. *Id*. Exhibit 50 also includes a list of Social Security benefits paid to Defendant's minor daughter for the months of August, 1996 through July, 2002. *Id*. These benefits total $33,728.00. When added to benefits received directly by Defendant, the benefits total $101,222.70.

Application Note 3(F)(ii) to Guideline § 2B1.1 states that the loss in this case is the difference between the benefits actually received by Defendant and the benefits he was entitled to receive. Thus, the Government's loss calculations are accurate only if Defendant and his daughter were not entitled to receive any benefits during the months of August, 1996 through July, 2002.

To establish that Defendant was not entitled to receive disability benefits during this period, and that his minor daughter was not entitled to receive benefits based on his disability, the Government provided the Court with Trial Exhibit 86. Exhibit 86 constitutes a summary of insurance sales commissions paid to Defendant during the years 1996-2002, as calculated from insurance company records subpoenaed by the Government for trial. Exhibit 86 shows that the insurance companies who responded to the Government's subpoenas paid Defendant the following total commissions for the years in question:

| Year | Amount |
|---|---|
| 1996: | $14,295.94 |
| 1997: | $16,255.96 |
| 1998: | $30,388.71 |

|   |         |              |
|---|---------|--------------|
| 1 | 1999:   | $43,257.71   |
| 2 | 2000:   | $38,110.25   |
| 3 | 2001:   | $41,473.04   |
| 4 | 2002:   | $35,433.84   |
| 5 | Total:  | $219,215.45  |

This evidence was corroborated by documents seized from Defendant's house. Those documents included commission statements reflecting the amount paid to Defendant during the years in question. They were less complete than the commission records obtained by subpoena directly from the insurance companies, but even they showed that Defendant received commission payments in excess of $177,653.77 during the period of 1996-2002.

The Government asserts, and Defendant does not disagree, that if Defendant's income exceeded $200 per month, he would enter a trial work period. The trial work period could last for nine months. Once that period had expired, Defendant would not be eligible to receive Social Security benefits if his income in any month exceeded $500. The Government asserts that Defendant's trial work period expired before August of 1996 and that he received income in excess of $500 for every month thereafter through July of 2002. Exhibit 86 lists the monthly amount of income Defendant received from the insurance commissions, and in each month the income exceeds $500.

In response to this evidence, Defendant asserts that the income reflected in Exhibit 86 does not constitute net income. Because it reflects gross receipts, not net income, Defendant asserts that it cannot be relied on to show that Defendant was ineligible for Social Security benefits. This is precisely the argument Defendant made to the jury at trial. Defendant's counsel raised this issue during his opening statement. (TT 3/1/05 at 122-123.) He cross-examined the Government's witnesses on this issue during trial. (TT 3/9/05 at 28-29.) In closing argument, Defendant's counsel argued that the Government had not produced evidence of Defendant's net income, and that the jury therefore could not conclude beyond a reasonable doubt that Defendant was ineligible for Social Security benefits during the years in question. (TT 3/11/05 at 84, 88, 91, 92-93.) Defendant's counsel did not attempt to

breakdown the numbers by month, but argued broadly to the jury that the Government had not produced evidence of net income and therefore had not established Defendant's ineligibility for Social Security benefits. In making this argument, Defendant's counsel specifically asserted that the Government was incorrect in arguing that Defendant had stolen "$101,000" and in asserting they lost "$101,000." (*Id.* at 99.) Thus, Defendant made the same argument to the jury that he is making to this Court: because the Government failed to prove Defendant's net income, it failed to show that he was ineligible for benefits in 1996-2002 and that the Government therefore lost $101,222.70.

The jury rejected this argument. Under the Court's jury instructions, the jury could convict Defendant of theft of Government property (Count 1) only by showing that "the defendant stole money or property of value with the intention of depriving the owner of the use or benefit of the money or property." To find Defendant guilty of Social Security fraud (Count 2), the jury had to find that the Defendant knowingly concealed or failed to disclose information with the intent to fraudulently secure payment of Social Security benefits in an amount greater than was due him. (TT 3/11/05 at 48-50.) The jury's prompt guilty verdict on both counts shows that the jury rejected defense counsel's argument that the Government had failed to prove net income and therefore had failed to prove that Defendant was ineligible for the benefits paid him by the Social Security Administration. The Court will accept the jury's determination for purposes of sentencing. The Court accordingly concludes that Defendant was not eligible to receive Social Security benefits for the months of August 1996 through July of 2002.

The Court notes, however, that both parties agree Defendant was entitled to a nine-month trial work period. As discussed at the sentencing hearing, the Government has not provided evidence from which the Court can conclude that the nine-month period expired before August of 1996. As a result, the Court cannot conclude that Defendant was ineligible for benefits for the first nine months reflected in Exhibit 50. Subtracting these months from the total (benefits paid to both Defendant and his daughter), results in a total loss amount of $88,800.70. The Court finds that the Government has established this loss amount by clear

and convincing evidence. Because this loss amount exceeds $70,000, the eight-level enhancement assessed by the Presentence Report under Guideline § 2B1.1(b)(1)(E) is appropriate. The Court also used this loss amount for purposes of assessing restitution against Defendant.[1]

### 2. Obstruction of Justice.

The Presentence Report applied a two-level enhancement for obstruction of justice under Guideline § 3C1.1. This enhancement was based on Defendant's allegedly evasive, false, and uncooperative testimony during trial. The Court did not apply this enhancement.

An obstruction of justice enhancement cannot be based on perjury at trial unless the Court finds that the testimony is false, material, and willful. *United States v. Shannon*, 137 F.3d 1112, 1119 (9th Cir. 1998). The testimony's inconsistency with the jury's ultimate verdict is not sufficient. *United States v. Monzon-Valenzuela*, 186 F.3d 1181, 1183-84 (9th Cir. 1999). In this case, Judge Silver's admonitions that Defendant give yes or no answers and avoid irrelevant responses certainly cannot be equated with willfully false statements. Nor is the Court inclined to conclude that unresponsiveness in trial testimony can constitute obstruction of justice. Defendant could have refused to testify at all, in which case he would have been less responsive than he actually was on the witness stand, and yet certainly no

---

[1] As part of the material filed in support of his motion for reconsideration (construed above as a motion for new trial), Defendant submitted to the Court net income calculations for the years 1996-2002. *See* Doc. #168, Ex. E. These documents, prepared by Defendant's counsel after trial, purport to include only net income amounts. As seen above, however, the jury rejected Defendant's net income argument at trial. Defendant's new exhibits also exclude "residual income" Defendant received from insurance companies – commissions paid in a later year for work performed in an earlier year – and yet the Court's review of the trial transcript reveals that Defendant unsuccessfully made the "residual income" argument to the jury as well. Finally, Defendant's new exhibits include income numbers for the years 1996 and 1997 that are based on Defendant's tax filing for those years. Defendant's accountant stated during the sentencing hearing that he obtained these income numbers from the IRS, but that they reflect the amount of income reported to the IRS by Defendant. The Court finds that the income numbers reflected in Trial Exhibit 86 are more reliable than Defendant's self-reported income for 1996 and 1997.

obstruction enhancement could be granted on the basis of his refusal to testify. It seems dangerous to suggest that a defendant who does take the stand must be cooperative with the prosecutor on cross-examination and must answer questions "yes or no" or he will be subject to an obstruction of justice enhancement. Any such conclusion would tread improperly on a defendant's constitutional right to testify. As a result, the Court will not award a two-level enhancement for obstruction of justice on the basis of Defendant's uncooperative and unresponsive testimony at trial.

### E.  Sanctions Against Counsel.

Frustrated with Defendant's late filing of the motion for reconsideration and objections to the Presentence Report, the Court issued an order to show cause why Defendant's counsel, Timothy Holtzen, should not be sanctioned. Mr. Holtzen filed a response to this order. *See* Doc. #164. Since entering the order to show cause, the Court has seen Mr. Holtzen act in a timely and professional manner on sentencing and new trial matters, and concludes that sanctions are not warranted. The Court trusts that future filings by Mr. Holtzen will not be made on the eve of sentencing hearings.

**IT IS ORDERED:** Defendant's Motion for Reconsideration of Motion for New Trial (Doc. #157) is **denied**. Defendant's Amended Memorandum Re: New Trial Based on Newly Discovered Evidence (Doc. #169), which the Court construes as a motion for new trial, is also **denied**.

DATED this 6th day of March, 2006.

_David G. Campbell_
David G. Campbell
United States District Judge